# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DAMIEN ADAMS,

Plaintiff,

v.                                                    9:12-CV-1400 (GLS/ATB)

D. ROCK, et al.,

Defendants.

DAMIEN ADAMS, Plaintiff, *pro se*
JOSHUA E. MCMAHON, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. Nos. 47, 50), to which plaintiff has responded (Dkt. No. 51). This matter was referred for Report and Recommendation on March 7, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

## BACKGROUND

Plaintiff filed this civil rights action alleging various violations of his federal constitutional rights while confined by the New York Department of Corrections and Community Supervision ("DOCCS") at the Upstate Correctional Facility ("Upstate") between May and July 2012. (Compl., Dkt. No. 1). By Decision and Order dated January 4, 2013, Chief Judge Sharpe dismissed, sua sponte, some of plaintiff's claims

and some of the defendants named in the complaint. (Dkt. No. 14 at 13-14).[1]

Plaintiff's surviving claims are: (1) an Eighth Amendment claim alleging that defendants Rock, Bishop, and Lashway subjected plaintiff to cruel and unusual punishment by placing him on a restricted diet for seven days pending a disciplinary hearing; (2) a claim that defendants Lashway, Travers, and Rock violated the Eighth Amendment by their deliberate indifference to plaintiff's serious medical needs, involving constipation and related issues; and (3) First Amendment claims that defendants Winston and Mitchell[2] filed a false misbehavior report against plaintiff in retaliation for a grievance that plaintiff submitted, and that defendants Cromp and Rock retaliated against plaintiff for filing two later grievances by failing to process those grievances.

Defendants have moved for summary judgment, arguing that placing plaintiff on a restricted diet for seven days could not constitute cruel and unusual punishment under the Eighth Amendment. Defendants further contend that plaintiff's medical conditions were not sufficiently serious to support his deliberate indifference claims. Finally, defendants argue that plaintiff's retaliation claims should be dismissed because no reasonable fact finder could conclude that there was an adequate causal connection between any protected activity on plaintiff's part and any adverse action by the defendants. (Def.s' Mem. of Law at 1, Dkt. No. 47-9). For these, and other

---

[1] Some of plaintiff's claims were denied without prejudice, with leave to amend. Plaintiff, however, did not move to amend his complaint.

[2] The complaint spells defendant Mitchell's last name as "Mitchee." The court will use the correct spelling provided in the defense motion papers.

reasons, the court recommends that plaintiff's remaining claims be dismissed.[3]

## <u>OVERVIEW OF FACTS</u>

Plaintiff was transferred to Upstate on May 14, 2012, where he was confined in a Special Housing Unit ("SHU"). (Compl., Dkt. No. 1 at 5).[4] The next morning, he and his cell mate submitted grievances complaining about the "filthy" conditions in their cell. (Dkt. No. 47-7 at 5). Defendant Mitchell picked up the mail that morning, including plaintiff's grievance. (Dkt. No. 1 at 5). Later on May 15th, defendant Winston issued a misbehavior report, witnessed by defendant Mitchell, alleging that plaintiff refused to return his "feed up tray." (Winston Decl., Ex. A, Dkt. No. 47-2 at 4). Plaintiff alleges the misbehavior report was false and was issued to retaliate for plaintiff's submission of a grievance earlier that same day. (Dkt. No. 1 at 5).

Pending plaintiff's disciplinary hearing, defendants Rock, Bishop, and Lashway placed plaintiff on a restricted diet for seven days. (Dkt. No. 1 at 6). Plaintiff claims that the restricted diet left him "weak and dizzy" and that Nurse Travers ignored his efforts to get medical attention. (*Id.*). He further alleges that Nurse Practitioner Lashway ignored plaintiff's complaints, starting in late June, about constipation and rectal bleeding. (Dkt. No. 1 at 8). On July 23, 2012, shortly after being transferred

---

[3] Defendants also argue that plaintiff's claims should be dismissed for failure to exhaust administrative remedies because the grievances allegedly submitted regarding the incidents relevant to this action were not filed within the time period required by applicable regulations. Because I find that plaintiff's claims are subject to dismissal for other reasons, I need not address the exhaustion issue.

[4] Because the complaint does not have consistent, consecutive page or paragraph numbers, the court will reference the page number assigned in the header created by our CM-ECF electronic docketing system.

from Upstate, plaintiff was taken to a hospital emergency room to address his complaints of pain and anal bleeding. He was diagnosed with an anal fissure and prescribed sitz baths and topical lidocaine. (Dkt. No. 50 at 55-57).

Plaintiff alleges that he submitted two grievances, one dated June 20, 2012, and the other date June 21st, complaining about the allegedly false and retaliatory misbehavior report filed against him, the lack of medical attention he received while on the restricted diet, and irregularities in the subsequent disciplinary proceeding, at which plaintiff was not present. (Dkt. No. 47-7 at 12-15). Plaintiff claims that Grievance Investigator Cromp met with plaintiff about these grievances on June 27, 2012, but never processed the grievances in retaliation for plaintiff's submission of them. (Dkt. No. 1 at 8-9).

Defendants' Memorandum of Law (at 2-5) summarizes the facts they offer by affidavit to oppose plaintiff's surviving claims. Rather than further discussing these facts at the outset, the court will address the details below to the extent they are necessary to address the issue raised in defendants' summary judgment motion.

## DISCUSSION

### I.    Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## II.     Eighth Amendment Claim Regarding Restricted Diet

Following the filing of the misbehavior report against plaintiff on May 15, 2012 for refusing to return his feed-up tray, Lt. Bishop recommended that plaintiff be placed on a restricted diet for seven days. (Bishop Decl. ¶¶ 3-6 & Ex. A, Dkt. No. 47-4). DOCCS regulations provide that an inmate in SHU may be placed on a restricted diet for up to seven days pending the outcome of a disciplinary hearing regarding, *inter alia*, a refusal to obey a direct order to return a food container or utensil at the

conclusion of a meal. 7 N.Y. Comp. Codes R. & Regs. § 304.2. After Nurse

Practitioner Lashway gave medical approval for plaintiff to be placed on the restricted

diet, Supt. Rock approved the imposition of a pre-hearing restricted diet for a period

of seven days. (Bishop Decl. ¶¶ 8-9; Lashway Decl. ¶¶ 3-9, Dkt. No. 47-5). The

restricted diet, which is required to be "wholesome and nutritious," includes a portion

of raw cabbage and a 2" by 6" loaf consisting of bread ingredients, milk, carrots, and

potatoes, served three times per day. (Lashway Decl. ¶¶ 5-6).

The Eighth Amendment's protection of prisoners from "cruel and unusual

punishment" includes the right to be free from conditions of confinement that impose

an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825,

837 (1994). Conditions imposed by a prison official violate the Eighth Amendment

only when a plaintiff establishes that (1) he was confined under conditions that

exposed him to a substantial risk of serious harm, and (2) prison officials acted with

deliberate indifference to his health or safety. *Id.* at 834.

With respect to the first prong, "under certain circumstances a substantial

deprivation of food may well be recognized as being of constitutional dimension."

*Robles v. Coughlin*, 725 F.2d 12, 15-16 (2d Cir. 1983) (citations omitted). For

instance, "'the Eighth Amendment prohibition against cruel and unusual punishment

does require that prisoners be served nutritionally adequate food . . . [that does not]

present an immediate danger to health and well being of the inmates who consume

it.'" *Id*. at 15 (citation omitted). With respect to the second prong, deliberate

indifference to inmate health or safety may be shown where a prison official knew a

diet was inadequate and likely to cause pain.  *See Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002).

Courts in this circuit routinely have dismissed Eighth Amendment claims based on the imposition of a pre-hearing restricted diet for seven days, or similar dietary restrictions, finding that the inmates failed to establish sufficiently "serious" deprivations.  *See, e.g., McEachin v. McGuinnis*, 357 F.3d 197, 199-200 (2d Cir. 2004) (affirming district court's dismissal of Eighth Amendment claim alleging, *inter alia*, that inmate was placed on a restricted diet consisting of "loaf" for seven days pending a disciplinary hearing); *Smith v. Burge*, No. 9:03-CV-955 (LEK/GHL), 2006 WL 2805242, at *1, 11 & n.78 (N.D.N.Y. Sept. 28, 2006) ("[a]t most, Plaintiff was deprived of food that tasted good for a period of seven days") (collecting cases); *Willey v. Kirkpatrick*, No. 07-CV-6484 , 2013 WL 434188, at *10 (W.D.N.Y. Feb. 4, 2013).  Moreover, as discussed further below, no rational fact finder would conclude that defendants Lashway and Travers were deliberately indifferent to any serious medical risk to plaintiff while he was on the restricted diet.  Accordingly, this court recommends that plaintiff's Eighth Amendment claim based the seven-day period during which he was on a restricted diet should be dismissed.[5]

---

[5] To the extent the plaintiff is asserting a due process claim against defendants Rock, Bishop, and Lashway, based on the imposition of a restricted diet for seven days before a disciplinary hearing, that claim should also be dismissed based on the reasoning in Chief Judge Sharpe's January 4, 2013 Decision and Order.  (Dkt. No. 14 at 5).  Plaintiff was found guilty of the misbehavior report, but was sentenced to a seven-day restricted diet, which plaintiff had, by that time, already served.  (Bishop Decl. ¶ 11 & Ex. B, Dkt. No. 47-4 at 2, 7-9).  To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process.  *Giano v. Selsky*, 238

## III. Eighth Amendment Claim Regarding Medical Care

### A. Applicable Law

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184.

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'" *Bellotto v. County of*

---

F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Chief Judge Sharpe dismissed the due process claim against former defendant Zerniak relating to the disciplinary proceedings against the plaintiff because the imposition of a restricted diet for seven days did not create an "'atypical and significant hardship' sufficient to implicate due process rights. (*Id.*). The same rationale would preclude a due process claim against anyone involved with the pre-hearing imposition of the restricted diet for seven days. *See, e.g.*, *Smith v. Burge*, 2006 WL 2805242, at *1, 12-14 & n.88 (dismissing substantive and procedural due process claims relating to a pre-hearing imposition of a restricted diet for seven days) (*citing, inter alia*, *McEachin v. McGuinnis*, 357 F.3d at 199, 200, 201).

*Orange*, 248 F. App'x 232, 236 (2d Cir. 2007).  If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d at 185-86. When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id*. at 185.  The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto*, 248 F. App'x at 236.

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837.  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or nonexistent." *Id.* at 844.  Thus, the Second Circuit has stated that the defendant's belief that his conduct posed no risk of serious harm "need not be sound

so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

A difference of opinion between an inmate and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 835. Any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (table).

**B.    Analysis**

As noted above, Nurse Practitioner Lashway determined that plaintiff was medically eligible before he was placed on a restricted diet. (Lashway Decl. ¶¶ 7-9). On May 16 and 17, 2012, plaintiff made sick call requests, but was not standing by the door with the light on in his cell, as required to be seen by the medical staff. (Travers Decl. ¶¶ 6-7, Dkt. No. 47-6; Ambulatory Health Records ("AHR"), Dkt. No. 50 at 38-39). Plaintiff alleges that Nurse Travers took advantage of the policy created by Upstate Superintendent Rock, that SHU inmates were required to have their cell lights

on to be seen on sick call, by falsely claiming that plaintiff's cell light was not on to avoid treating plaintiff. (Dkt. No. 1 at 6-7). Plaintiff claims that, although he was weak and dizzy from the restricted diet, he was discouraged by Nurse Travers's efforts to avoid giving him medical attention; so he decided to wait for his disciplinary hearing to address his issues. (*Id*.). However, plaintiff produced, in discovery, medical records confirming that, between and including May 18 and 21, 2012, he was evaluated by other medical staff at Upstate, and displayed no evident medical problems relating to his diet. On two of those days, plaintiff explicitly denied that he had any medical complaints. (Scott Decl. ¶ 3 & Ex. A, Dkt. No. 47-7 at 1, 31-34).

Plaintiff also alleges that defendant Lashway ignored his written complaint, on June 22, 2012, of constipation and rectal bleeding when he went to the bathroom. (Dkt. No. 1 at 8, 16-17). Plaintiff's letter to Nurse Practitioner Lashway acknowledges that he was treated for constipation, with a stool softener, by the Upstate Medical staff on June 21st. (Dkt. No. 47-7 at 16; AHR, Dkt. No. 50 at 38; Travers Decl. ¶ 8). Plaintiff's medical records also indicate that he was treated by Nurse Travers and others, based on further complaints of constipation and hard stools (but not rectal bleeding), on June 25th and 28th. (AHR, Dkt. No. 50 at 36-37). On July 29th, plaintiff wrote a letter to DOCCS Chief Medical Officer, Lester Wright, complaining that Nurse Practitioner Lashway should not have approved him for a restricted diet given his history of serious constipation, and that the treatment of his constipation and rectal bleeding with stool softeners by the Upstate medical staff was

not working.  (Dkt. No. 47-7 at 20).[6]

Plaintiff claims that Nurse Travers saw evidence of plaintiff's rectal bleeding on July 22, 2102, the day before he was transferred out of Upstate; but there are no medical records to corroborate that claim.  (Dkt. No. 1 at 13; AHR, Dkt. No. 50 at 35-36).  In fact, the last entry in plaintiff's medical records from Upstate, made on July 19th by a nurse not named as a defendant in this action, noted that plaintiff had no acute medical problems.  (AHR, Dkt. No. 50 at 35).

After his arrival at Coxsackie Correctional Facility on July 23rd, plaintiff was found shaking on the floor of his cell and taken to a hospital emergency room.  (AHR, Dkt. No. 50 at 33-34).  Plaintiff was found to have an anal fissure,[7] but had normal stools, and no fever, chills, nausea, and vomiting.  (Dkt. No. 50 at 55-56).  He was prescribed sitz baths and topical lidocaine and released back to DOCCS custody.  (Dkt. No. 50 at 32-33, 55-56).  Subsequent DOCCS medical records, through January 2013, indicated that plaintiff had recurring issues with constipation, hemorrhoids, minor rectal bleeding, and blood in his stool; but not more serious medical issues.  (Dkt. No. 50 at 9-19, 22-23, 25-28).  Plaintiff periodically received treatment for these conditions from DOCCS, including stool softeners and hemorrhoid creams and

---

[6] Plaintiff's letter indicates that he copied "Nurse Practitioner" but it is not clear whether defendant Lashway ever received a copy.

[7] "An anal fissure . . .  is a small, oval shaped tear in skin that lines the opening of the anus.  Fissures typically cause severe pain and bleeding with bowel movements.  Fissures are quite common in the general population, but are often confused with other causes of pain and bleeding, such as hemorrhoids."  http://www.fascrs.org/patients/conditions/anal_fissure/ (website of the American Society of Colon and Rectal Surgeons).

suppositories.  (*Id.*).

A noted above, the medical records indicate that plaintiff did not complain of constipation or associated bleeding until June 21 and 22, 2012–well after he completed the seven-day restricted diet.  Constipation and minor bleeding while having bowel movements do not constitute "serious" medical conditions necessary to establish the objective component of an Eighth Amendment medical care claim.  *See, e.g.*, *Black v. Fischer*, No. 9:08-CV-232 (FJS/DEP), 2010 WL 2985081, at *10 (N.D.N.Y. July 1, 2010) (constipation and an external hemorrhoid for a period of less than one month, during which plaintiff experienced typical symptoms, including discomfort and minor bleeding, without more, are not sufficiently serious to establish an Eighth Amendment claim) (collecting cases); *McGee v. Pallito*, 1:10-CV-11, 2014 WL 360289, at *7 (D. Vt. Feb. 3, 2014) (constipation, even with some associated bleeding, has been held to be insufficient for Eighth Amendment purposes).  *See also Young-Flynn v. Wright*, No. 05 Civ.1488, 2007 WL 241332, at *18 (S.D.N.Y. Jan. 26, 2007) (in the absence of evidence that rectal bleeding proved to be symptomatic of a more serious condition, such as colon cancer, it was not sufficiently serious to support an Eighth Amendment claim).

It is highly unlikely that a rational fact-finder would conclude that Nurse Travers intentionally avoided giving plaintiff medical attention for a serious medical condition on May 16 and 17, as plaintiff alleges.  Medical records show that plaintiff made no complaints of health problems to other Upstate medical staff in the following

days, and did not complain of constipation until a month later.[8]  In any event, even if there was a brief delay in providing plaintiff medical attention for constipation, the delay did not pose any serious risk to plaintiff's health.[9]

Plaintiff could not persuade a rational fact finder that defendant Lashway acted with deliberate indifference to his serious medical needs.  Plaintiff argues that he should not have been placed on a restricted diet given his history of constipation. (Dkt. No. 1 at 17).  Nurse Practitioner Lashway stated that constipation was not a disqualifying medical condition for placing an inmate on the restricted diet, and that the fiber in the loaf, with proper water intake would help address constipation. (Lashway Decl. ¶¶ 6-9).  As plaintiff implicitly acknowledges in his complaint, he did not complain of constipation to the medical staff until June 21, 2012, a month after he completed the restricted diet.  (Dkt. No. 1 at 8; Travers Decl. ¶ 8).  Even if plaintiff's allegations are accepted as true, he is stating, in essence, that he disagrees with Nurse Practitioner Lashway's medical judgment that he was medically fit to be placed on a

---

[8] *See, e.g., Brown v. White*, 9:08-CV-200, 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular date is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record)*; Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352 at n.5, (S.D.N.Y. July 27, 1995) (conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")).

[9] *See, e.g., Evans v. Manos*, 336 F. Supp. 2d 255, 262 (W.D.N.Y. 2004) ("Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where 'the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.'")

restricted diet. Even if defendant Lashway's decision reflected medical malpractice, that would not support plaintiff's claim that she was deliberately indifferent to his serious medical needs.

Plaintiff's June 2012 letters to Nurse Practitioner Lashway and Dr. Wright argue that he needed a high-fiber diet, and that stool softeners prescribed by the Upstate medical staff were not meeting his needs. (Dkt. No. 47-7 at 16, 20). Plaintiff's disagreement with the medical staff's judgment as to appropriate treatment does not rise to the level of deliberate indifference. *See, e.g.*, *Black v. Fischer*, 2010 WL 2985081, at *11 ('[p]laintiff's obvious dissatisfaction or disagreement with treatment that he received for his hemorrhoid is patently insufficient to establish an Eighth Amendment violation") (citations omitted).

Plaintiff was diagnosed with an anal fissure shortly after he was transferred from Upstate. The medical records do not support plaintiff's claim that Nurse Travers was aware that plaintiff was suffering from rectal bleeding or severe pain just before his transfer, as plaintiff claims. Even if someone missed a diagnostic clue that plaintiff was suffering from an anal fissure before his transfer, that would be, at most, malpractice and not deliberate indifference. In any event, although plaintiff made a dramatic show of pain prior to being taken to the emergency room, his anal fissure was apparently resolved with conservative treatment of topical lidocaine and sitz baths, suggesting that it was not a sufficiently serious condition to support a claim that

any defendant was deliberately indifferent to a serious medical need.[10]

## IV.    Retaliation/Personal Involvement

### A.    Applicable Law

#### 1.    Retaliation

In order to establish a claim of retaliation for the exercise of a First Amendment right, plaintiff must show that he engaged in constitutionally protected speech or conduct, and that the protected activity was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *see also Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (citation omitted). This objective test applies whether or not the plaintiff was himself subjectively deterred from exercising his rights. *Id.* Participation in the grievance process by an inmate is clearly protected conduct in the context of a retaliation claim. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n. 21 (S.D.N.Y. 2011) (collecting cases).

To establish retaliation, the plaintiff must also demonstrate a causal connection

---

[10] Plaintiff also includes Superintendent Rock in his deliberate indifference claim, asserting that he established the policy regarding SHU sick call procedures which allowed Nurse Travers to ignore plaintiff's requests for medical attention on May 16 and 17, 2012. Given that the court found that defendant Travers did not demonstrate deliberate indifference to any serious medical need of plaintiff, defendant Rock could not be vicariously liable because no Eighth Amendment violation could be established.

between the protected speech or conduct and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Although a "'plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action[,]' "[s]uch circumstantial evidence of retaliation, . . . without more, is insufficient to survive summary judgment." *Roseboro v. Gillespie*, 791 F. Supp. 2d at 370 (citations omitted).

Even if plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id*. at 371. "Regardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show . . . that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343 F.3d at 137. Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Smith v. Woods*, 9:03-CV-480 (DNH/GHL),

2006 WL 1133247, at *3 & n.11 (N.D.N.Y. Apr. 24, 2006) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005)). To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint "must, among other things, be based 'on personal knowledge.'" *Id.,* 2006 WL 1133247, at *3 & n.7 (collecting cases); Fed. R. Civ. P. 56(c)(4).

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights may be implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

### 2. Personal Involvement

For retaliation claims, as for other section 1983 claims, a plaintiff "must show some tangible connection between the constitutional violation alleged and [a] particular defendant." *Toole v. Connell*, 9:04-CV-724 (LEK/DEP), 2008 WL 4186334, at *6 (N.D.N.Y. Sept. 10, 2008). Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)

(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In

*Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed

the various ways in which a defendant can be personally involved in a constitutional

deprivation, and thus be subject to individual liability: (1) if the supervisor directly

participated in the infraction; (2) if, after learning of a violation through a report or

appeal, he or she failed to remedy the wrong; (3) if the official created a policy or

custom under which unconstitutional practices occurred, or allowed such a policy or

custom to continue; or (4) if he or she were grossly negligent in managing

subordinates who caused the unlawful condition. *Id.*

### B. Analysis

Defense counsel argues, *inter alia*, that the retaliation claims should be

dismissed because there was no causal connection between plaintiff's protected

conduct and the alleged adverse actions against him; and it appears that at least one

defendants was not personally involved in any adverse action against plaintiff. Thus,

my analysis requires a close examination of the record regarding each defendant.

*Toole v. Connell*, 2008 WL 4186334, at *6 (analysis of retaliation claims requires

careful, case-specific, consideration of the protected activity in which the inmate

plaintiff has engaged, the adverse action taken against him or her, and the evidence

tending to link the two).

### 1. Defendants Mitchell and Winston

Plaintiff alleges that he mailed the grievance regarding the condition of his SHU

cell on May 15, 2014, the day after he arrived at Upstate. (Dkt. No. 1 at 5).

Defendant Mitchell collected the mail from plaintiff, and between 250 and 300 other inmates on the morning of May 15th, placing it in a locked box at the security desk for pick-up and delivery by others.  Although Correction Officer ("C.O.") Mitchell is required to check that inmates properly identify themselves on the return address of each envelope, he was "not mindful" of whether plaintiff submitted a grievance on that morning.  (Mitchell Decl. ¶¶ 5-9, Dkt. No. 47-3).  Plaintiff's grievance was not investigated at Upstate until June 5, 2012.  (Cromp Decl. ¶ 5 & Ex. B, Dkt. No. 47-8 at 2, 7).

Defendant Winston, assisted by defendant Mitchell, conducted "feed-up" on plaintiff's cell block on May 15th.  C.O. Winston issued plaintiff a misbehavior report for failing to return his feed-up tray and disobeying a direct order; C.O. Mitchell witnessed the misbehavior report.  (Winston Decl. ¶¶ 4-5; Mitchell Decl. ¶¶ 11-12).  Defendant Winston states that he had no knowledge that plaintiff had submitted a grievance earlier that day, and issued the misbehavior report because plaintiff refused to return his feed-up tray.  (Winston Decl. ¶¶ 4-6).

In his response to the summary judgment motion, plaintiff "agree[s]" with the factual allegations of defendants Winston and Mitchell, but states that he "truly believe[s]" that the defendants issued the report in retaliation for plaintiff's filing of a grievance earlier that day.  (Dkt. No. 51 at 8, 14).  In the absence of any objective corroboration, plaintiff's speculation regarding the retaliatory motivation of defendant Mitchell and Winston is not sufficient to establish a causal connection between plaintiff's grievance and the misbehavior report issued by the defendants.  First of all,

plaintiff provides no evidentiary support to overcome the sworn statement of the defendants that they did not know that plaintiff had filed a grievance before they issued the misbehavior report. Obviously, there could be no causal connection between plaintiff's grievance and the misbehavior report if the defendants were not aware of the grievance when they initiated disciplinary charges. *See Roseboro v. Gillespie*, 791 F. Supp. at 368-69 (plaintiff's unsupported speculation that C.O. Wingate learned of plaintiff's grievance by speaking to C.O. Gillespie before Wingate initiated an adverse action against plaintiff is not sufficient to establish the required causal connection to overcome a summary judgment motion).

In addressing the requirement of a causal connection between the protected speech and the alleged adverse actions in the context of a summary judgment motion, a court may consider: "(1) any statements made by the defendant concerning his motivation for his conduct; (2) the temporal proximity between the protected activity and the alleged adverse action; (3) the plaintiff's prior good disciplinary record; and (4) whether the plaintiff was vindicated at the subsequent disciplinary hearing." *Roseboro v. Gillespie*, 791 F. Supp. 2d at 366, 369 (collecting cases). Even assuming the defendants had knowledge of plaintiff's grievance at the time they issued the misbehavior report, the temporal proximity between the two would not, by itself, suffice to establish causation. *Id.* at 370. It is improbable that either defendant would retaliate against plaintiff for a grievance that did not name either of them. *See, e.g.*, *Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for

complaints against another defendant.") (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer); *Roseboro v. Gillespie*, 791 F. Supp. 2d at 369 (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in). Moreover, plaintiff does not claim that either defendant made a statement reflecting a retaliatory intent for initiating disciplinary charges against him.

Plaintiff was transferred to Upstate because of disciplinary problems, and did not have a good disciplinary record. (Bishop Dec. ¶ 5; Scott Decl. ¶ 6 & Ex. C, Dkt. No. 47-7 at 2, 154-58). Defendants' documentary evidence indicates that plaintiff declined to attend his disciplinary hearing after acknowledging that he was guilty. (Bishop Decl., Ex. B, Dkt. No. 47-4 at 12, 20-21). While plaintiff alleges that he did not attend his disciplinary hearing because he was misled into thinking the charges against him had been dismissed (Dkt. No. 1 at 7-8; Dkt. No. 47-7 at 14), he can offer no corroboration for his claim that the disciplinary charges against him were false.[11]

---

[11] Defendants argue that, based on the outcome of the disciplinary hearing, it is clear that the defendants would have filed the misbehavior report against plaintiff even if they had known about his grievance. (Def.s' Mem. of Law at 3, 18-19). See, e.g., *Lowrance v. Achtyl*, 20 F.3d 529, 534-35 (2d Cir. 1994) (defendants met their burden of showing that they would have disciplined the plaintiff even in the absence of the protected conduct because the plaintiff had admitted to engaging in the misconduct that formed the basis of the misbehavior report; plaintiff's retaliation claim was properly dismissed under *Mt. Healthy* and its progeny). Plaintiff's allegations that he was denied the opportunity to attend the disciplinary hearing arguably creates an issue of fact with respect to this issue. Accordingly, this court will not rely on this line of argument to recommend a grant of summary judgment in defendants' favor.

Accordingly, this court concludes that no rational fact finder could conclude that defendants Mitchell and Winston issued a misbehavior report against plaintiff in retaliation for plaintiff's submission of a grievance.

### 2. Defendant Cromp

Plaintiff claims that, after interviewing plaintiff on June 27, 2012, with respect to two grievances plaintiff submitted earlier that month, Grievance Investigator Cromp never processed those grievances, in retaliation for plaintiff's submission of them. (Dkt. No. 1 at 8-9).[12]  Defendant Cromp states that there is no record that plaintiff ever submitted the two grievances dated June 21st and 22nd; and he has no recollection of investigating any such grievances.  (Cromp Decl. ¶ 8).  In any event, even assuming the truth of plaintiff's allegations, "the refusal to process a small number of grievances does not constitute an adverse action" required to support a First Amendment retaliation claim.  *Hill v. Laird*, No. 06-CV-126, 2014 WL 1315226, at *10 (E.D.N.Y. Mar. 31, 2014) (*citing Ross v. Westchester*, No. 10-CV-3937, 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012)).

Moreover, other than the temporal proximity between the alleged filing of the

---

[12] Chief Judge Sharpe dismissed plaintiff's claim that defendant Cromp violated plaintiff's procedural due process rights by failing to process plaintiff's two grievances.  (Dkt. No. 14 at 6 (*citing, inter alia*, *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim")).  Chief Judge Sharpe, however, declined to dismiss plaintiff's retaliation claim against defendant Cromp *sua sponte*, based on the standards for dismissal under 28 U.S.C. §§ 1915(e) & 1915A and Fed. R. Crim. P. 12(b)(6), which are clearly more favorable to plaintiff than the summary judgment standards under Rule 56 that must be applied here.  (Dkt. No. 14 at 3-4, 6-7, 9 ("the Court expresses no opinion as to whether plaintiff's [surviving] claims can withstand a properly filed motion to dismiss or for summary judgment")).

two grievances and defendant Cromp's purported failure to process them, plaintiff offers no evidence to corroborate his claim that Inv. Cromp acted with a retaliatory intent. Based on the authority cited above, the fact that the grievances allegedly submitted to defendant Cromp did not implicate him in any wrongdoing contradicts plaintiff's speculation that Inv. Cromp retaliated against plaintiff because of the grievances. It is particularly unlikely that defendant Cromp would retaliate against an inmate for filing a grievance because his job primarily involved the investigation of grievances.[13] Plaintiff alleges that Inv. Cromp unsuccessfully tried to persuade plaintiff to combine his two grievances because they both complained of the same conduct, but otherwise cites no statements by this defendant that would suggest he harbored a retaliatory intent. (Dkt. No. 1 at 9). Plaintiff's unsupported and speculative conclusion that defendant Cromp's alleged actions were taken to retaliate because plaintiff filed grievances are not sufficient to overcome defendant Cromp's sworn declaration that he never retaliated against an inmate for using the grievance process. (Cromp Decl. ¶ 9). This court concludes that no rational juror would conclude that, even if defendant Cromp failed to process two of plaintiff's grievances, that conduct constituted an "adverse action" or that this defendant acted with a

---

[13] Indeed, if an inmate could base a retaliation claim for a correction official's failure to process a grievance merely on the fact that the inmate submitted a grievance, that would completely circumvent the clear authority that state-law grievance procedures do not create constitutionally protected due process rights. *See, e.g., Cancel v. Goord*, No. 00. CIV. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983").

retaliatory intent.[14]

### 3. Defendant Rock

Plaintiff has named Supt. Rock in his retaliation claim involving defendant Cromp's alleged failure to process plaintiff's two grievances in June 2006. Plaintiff alleges that he twice wrote defendant Rock complaining that his grievances had not been processed, and Supt. Rock took no action, but instead directed plaintiff to submit any inquiries to the IGP office. (Dkt. No. 1 at 10, 12, 20; Dkt. No. 47-7 at 40-42). Given this court's conclusion that plaintiff's constitutional rights were not violated even if defendant Cromp failed to process plaintiff's two grievances, defendant Rock cannot be vicariously liable on plaintiff's retaliation claim. In any event, defendant Rock's failure to follow up on plaintiff's complaint about the handling of his grievances, and the fact that he directed plaintiff to address his complaint to the IGP, would not be sufficient to establish Supt. Rock's personal involvement even if there had been a violation of plaintiff's constitutional rights by defendant Cromp. *See, e.g., Harnett v. Barr*, 538 F. Supp. 2d 511, 525 (N.D.N.Y. 2008) (Superintend Woods'

---

[14] Defense counsel also argues that, even if Inv. Cromp failed to process plaintiff's two grievances, he has a defense under *Mount Healthy* and its progeny because the grievances would have been subject to denial as untimely under DOCCS rules. (Def.s' Mem. of Law at 19). 7 N.Y. Comp. Codes R. & Regs. § 701.5(a)(1) provides that "An inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form (form # 2131)." However, that same regulation provides the Inmate Grievance Program ("IGP") Supervisor has the power to make exceptions to such time limit. *See, id*. ("Exceptions to this time limit or any appeal time limits may be approved by the IGP supervisor under section 701.6(g) of this Part."). If, in fact, defendant Cromp failed to process plaintiff's untimely grievances, he deprived plaintiff of an opportunity to persuade an IGP supervisor to consider the grievance. *Smith v. Haag*, No. 08-CV-6360, 2011 WL 6012606, at *5 (W.D.N.Y. Dec. 1, 2011). Accordingly, this court will not rely on *Mount Healthy* in recommending dismissal of the retaliation claim against defendant Cromp.

referral of plaintiff's letters back to the grievance supervisor or to other staff members for investigation does not make him personally responsible for the alleged violations in those letters); *Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (the failure of a supervisory official to respond to a letter of complaint is insufficient to create personal responsibility); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoners to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official).

    **WHEREFORE**, based on the findings above, it is

    **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 47) be **GRANTED**, and that plaintiff's complaint be **DISMISSED** in its entirety.

    Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated: December 9, 2014**

Hon. Andrew T. Baxter
U.S. Magistrate Judge